1  James C. Shah (SBN 260435)
   Email: jcshah@millershah.com
2  Kolin C. Tang (SBN 279834)
   Email: kctang@millershah.com
3  **MILLER SHAH LLP**
4  8730 Wilshire Boulevard, Suite 400
   Beverly Hills, California 90211
5  Telephone: (866) 540-5505
6  Facsimile: (866) 300-7367
7
   Christopher E. Roberts (SBN 363586)
8  Email: CRoberts@butschroberts.com
9  BUTSCH ROBERTS & ASSOCIATES LLC
   7777 Bonhomme Avenue, Suite 1300
10 Clayton, Missouri 63105
   Telephone: (314) 863-5700
11
12 *Attorneys for Plaintiff*

13

**IN THE UNITED STATES DISTRICT COURT**
14  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
15

| | |
|---|---|
| 16  KIMBERLY HUDSON, individually and on behalf of others similarly situated, | Case No.: 2:26-cv-01158 |
| 17 | |
| 18         Plaintiff, | **CLASS ACTION COMPLAINT** |
| 19 | |
| 20      v. | **JURY TRIAL DEMANDED** |
| 21  LEMARK REALTY, | |
| 22         Defendant. | |

23

24

25

26

27

28

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff, Kimberly Hudson ("Plaintiff" or "Hudson"), individually, and on behalf of all others similarly situated, through her undersigned counsel, and for her Class Action Complaint against Defendant, LeMark Realty ("Defendant" or "LeMark Realty"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1.  The receipt of unwanted telemarketing communications has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant telemarketers, like Defendant, from placing text messages to the cell phones of Hudson and likely thousands of other persons whose phone numbers were registered on the National Do-Not-Call Registry ("DNC List").

2.  Hudson brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the DNC List, in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

3.  In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4.  The TCPA affords protections to people, like Hudson, who receive telephone solicitation communications, despite their phone numbers being registered on the DNC List. *See* 47 U.S.C. § 227(c)(3)(A)(iii); 47 C.F.R. § 64.1200(c)(2). The penalty for violating the TCPA is up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5).

5.      The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hudson, frequently face. For example, in 2025 alone, approximately 52.5 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited January 26, 2026).

6.      Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7.      The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

9.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California, Defendant is a California corporation, it transacts business in California, directly markets its products and services in California, and sells various services in California, and for the reasons otherwise set forth in this Complaint.

10.     Defendant has continuous and systematic contacts with the State of California.

11.     Hudson was (and is) a resident and citizen of Los Angeles, California at all times relevant to this Complaint.

12.     Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District and the harms of Defendant's actions were sustained in this venue.

13.     The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

14.     At all times relevant to this Complaint, Hudson was, and is still, the owner of a cell phone, with a phone number of 323-XXX-1729.

15.     Hudson's phone number was registered on the DNC List on September 1, 2003, for the purpose of being left alone by telemarketers.

16.     The monthly bill associated with Hudson's phone number is issued in her name, and not in the name of a business.

17.     Hudson uses her phone primarily for personal purposes, such as communicating with friends and family members.

18.     Defendant LeMark Realty is a California corporation within its principal place of business in California.  Defendant has been authorized and in good standing to transact business in California and throughout the United States at all times material to this Complaint.

19.     Defendant's business registration with the California Secretary of State states that Defendant's "Type of Business" is "Real Estate."

20.     Defendant's website is www.lemarkitsold.com.

21.     Defendant's website states that it offers "real estate services in both Arizona and California" and that it represents "buyer and seller" in the "purchase and sale" of real estate.

22.     Defendant's website states that it has offices in California located in Beverly Hills, San Diego, and Temecula.

23.    Defendant's website contains biographies of its team members.  One of these team members is a "Realtor" named "Kimberly Stuart."  Defendant's website states that Ms. Stuart helps her "clients find the home that is right for their lifestyle and investment or sell their home to the right buyer."

24.    Defendant makes a profit from receiving a commission from the real estate it sells or helps purchase for its clients.

25.    Defendant markets its real estate services, in part, through placing telemarketing communications, such as the sending of text messages.

26.    Hudson and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. §64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

## DEFENDANT'S TEXT MESSAGES TO PLAINTIFF

27.    On May 5, 2025, Defendant, or someone acting on its behalf sent a text message to Hudson, stating:

Hello, I'm Kimberly Stewart with LeMark Realty. We noticed you own 5156 ANGELES VISTA BLVD in Los Angeles. We specialize in selling real estate in 90043 zip code and market values are peaking. Would you like to know what your property could sell for?

You can reply NO to cancel anytime.

28.    On May 6, 2025, Defendant, or someone acting on its behalf, sent a text message to Hudson, stating:

I wanted to follow up with my last text regarding your property at 5156 ANGELES VISTA BLVD. We specialize in zip code 90043. I can provide a market analysis free of charge. Springtime is one of the best time[s] to sell.

You can reply NO to cancel anytime.

29.    On May 8, 2025, Defendant, or someone acting on its behalf, sent a text message to Hudson, stating:

1

2

3

Just checking in – homes in the 90043 area are moving quickly this season, and some are selling above asking price. Even if you're just curious, I'd be happy to share what your home could be worth right now. You can reply NO to cancel anytime.

4

5

30.    Hudson never inquired of Defendant's services, nor did she provide any form of consent to be contacted by Defendant on her cell phone.

6

7

8

31.    Hudson seeks recovery individually, and on behalf of the putative class members, for the text messages sent to Hudson and the putative class members by or on behalf of Defendant despite their phone numbers being registered on the DNC List.

9

## DIRECT AND VICARIOUS LIABILITY

10

11

12

32.    Without the benefit of discovery, and because Defendant disclosed its identity in the text messages at issue, Hudson assumes Defendant directly placed the texts at issue.

13

14

33.    However, if some or all the texts were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

15

16

34.    On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

17

18

19

20

21

22

23

24

25

26

27

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

28

1  *In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal

2  citations omitted).

3      35.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA

4  liability, including the assertion that a seller's liability requires a finding of formal

5  actual agency and immediate direction and control over third parties who place a

6  telemarketing call. *Id*. at 6587 n. 107.

7      36.    The evidence of circumstances pointing to apparent authority on behalf of

8  the telemarketer "should be sufficient to place upon the seller the burden of

9  demonstrating that a reasonable consumer would not sensibly assume that the

10  telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

11      37.    If Defendant directly placed the texts at issue to Hudson and the putative

12  class members, Defendant is directly liable for the placing of those calls.

13      38.    However, Defendant may have hired, encouraged, permitted, and enjoyed

14  the benefits of mass telemarketing by third-party telemarketers.

15      39.    If Defendant did not directly place the texts at issue to Hudson and the

16  putative class members, Defendant's third-party telemarketers had actual and/or

17  apparent authority to act on behalf of Defendant.

18      40.    Likewise, Defendant also ratified its agents' violations of the TCPA by

19  accepting sales from unlawful telemarketing communications.

20      41.    Defendant controlled or had the right to control the marketing activities of

21  those acting on its behalf.

22      42.    Defendant acted as principals to telemarketing agent(s) who were acting

23  on their behalf.

24      43.    Defendant is not permitted under the law to outsource and contract their

25  way out of liability by directing and benefitting from their captive agents' TCPA

26  violations.

27      44.    For the count identified below, if Defendant directly placed the calls at

28  issue to Hudson and the putative class members, it is directly liable. Alternatively, to

1    the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf,

2    Defendant is vicariously liable for those unlawful communications.

3    **CLASS ALLEGATIONS**

4    45.    Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3),

5    Plaintiff brings this lawsuit as a class action on behalf of herself, and all others similarly

6    situated. This action satisfies the requirements of Rule 23.

7    46.    Hudson seeks to represent the following class:

8    **DNC Class:** All persons in the United States who from four years prior to
     the date of the filing of this lawsuit until the date of class certification:
9    (1) received two or more text messages during a 12-month period in
     connection with the marketing of Defendant's products and/or services; (2)
10   whose number was registered on the DNC List for more than 30 days at the
     time the calls were received; and, (3) whose phone number is registered to
11   an individual and not a business.

12   47.    Hudson reserves the right to add administrative subclasses or add classes,

13   and/or to amend the definition of the proposed class, as this lawsuit proceeds.

14   48.    The members of the proposed class are so numerous that joinder of all

15   members is impracticable. Hudson reasonably believes that hundreds or thousands of

16   people have been harmed by Defendant's actions. The phone numbers of the members

17   of the proposed classes are readily identifiable through records available to Defendant

18   or those acting on their behalf.

19   49.    Most members of the proposed class have suffered damages in an amount

20   such that it would make filing separate lawsuits by individual members economically

21   infeasible.

22   50.    On information and belief, Defendant has texted, and likely continues to

23   text, people whose numbers are on the DNC List. It is reasonable to expect that

24   Defendant will continue to place such calls, absent this lawsuit.

25   51.    Common questions of law and fact exist as to all members of the proposed

26   class and predominate over any questions affecting only individual members. The

27   questions of law and fact common to the proposed Class include, but are not limited

28

to:

a.      Whether Defendant's conduct of placing text messages to phone numbers on the DNC List Defendant violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

b.      Whether the texts were "solicitations," as defined by the TCPA;

c.      Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

d.      Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

e.      Whether Hudson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

52.      Hudson's claims are typical of the claims of the proposed class members because her claims arise from the same practice that gives rise to the claims of the members of the proposed classes and are based on the same legal theories.

53.      Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed class. Hudson's interests do not conflict with the interests of the proposed class she seeks to represent, and she has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

54.      Hudson's counsel will vigorously litigate this case as a class action.

55.      A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed classes in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed classes had the resources to pursue individual litigation, that

method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

56.    In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

57.    Questions of law and fact, particularly (and not limited to) the propriety of sending text message solicitations to persons on the DNC List, predominate over questions affecting only individual members.

58.    Defendant has acted or refused to act on grounds that apply generally to the Class, making final injunctive relief or corresponding declaratory relief is appropriate with respect to the putative class members.

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

59.    Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

60.    The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

61.    In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

62.    By sending text messages to Hudson's and the DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

63.     In addition, the TCPA allows the Court to enjoin Defendant from placing text messages to phone numbers that are registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

64.     Defendant knew or had reason to know that Hudson's and the putative class members' phone numbers were on the DNC List but texted them anyway.

65.     Defendant willfully violated the TCPA by sending text messages to Hudson and the DNC Class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

66.     Hudson and the putative class members are entitled to damages of $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests that the Court:

a.     Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the DNC List Class representative, and appointing her counsel as class counsel;

b.     Enter judgment in favor of Plaintiff and the DNC List Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c.     Enter a judgment in favor of Plaintiff and the DNC List Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d.     Enter judgment in favor of Plaintiff and the DNC List Class for all applicable pre-judgment and post-judgment interest amounts;

e.     Enter judgment in favor of Plaintiff and the DNC List Class for all costs, including the cost of class notice; and

f.    Award Plaintiff and the DNC List Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Kimberly Hudson demands a jury trial.

Dated: February 4, 2026                 Respectfully submitted,

MILLER SHAH LLP

*/s/James C. Shah*
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/Christopher E. Roberts*
Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*